KILLINGER v. CLEMENT, State Com'r of Excise, et al.

(Supreme Court, Appellate Division, Fourth Department. March 3, 1909.)

INTOXICATING LIQUORS (§ 31*)—LOCAL OPTION—CONSTRUCTION OF STATUTES.

Laws 1903, p. 1062, c. 458, authorized the electors of a town to vote at a special town meeting whether liquor should be sold in a particular hamlet embraced within the town. The vote was to take effect at once, but not to affect the issuance of liquor tax certificates in the portion of the town not included in the hamlet, and was to remain in full force, and until the second regular submission of such question to the electors of the town. Except as prescribed the liquor traffic in the hamlet was to be subject to the provisions of the liquor tax law (Laws 1896, p. 45, c. 112), which makes the town the unit, even though it may contain one or more incorporated villages, the electors thereof to determine whether liquor shall be sold and the vote to determine the question for the entire town. *Held*, that the law of 1903 permitted a temporary deviation from the general law as to the area to be affected for a definite period if the electors of the town so determined, there being no provision for any other election except in accordance with the liquor tax law, and the separation of the hamlet from the rest of the town was not intended to be permanent so that local option questions should be submitted especially for the hamlet at future town meetings.

[Ed. Note.—For other cases, see Intoxicating Liquors, Dec. Dig. § 31.*]

Appeal from Equity Term, Niagara County.

Action by Benjamin Killinger against Maynard N. Clement, State Commissioner of Excise, and another. Judgment for plaintiff, and defendants appeal. Reversed, and new trial ordered.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Daniel A. Reed, for appellants.
Augustus Thibaudeau, for respondent.

SPRING, J. The plaintiff is a resident and proprietor of a hotel in the unincorporated village of Olcott, in the town of Newfane, Niagara county. He has commenced this action in equity to compel the issuance to him of a liquor tax certificate in order that he may continue the traffic of liquors in said hotel. An act was passed by the state Legislature (chapter 458, p. 1062, Laws 1903), which, as its title reads, was "to authorize the electors of the town of Newfane, Niagara county, to vote upon the local option questions specified in section sixteen of the liquor tax law as restricted to the limits of the hamlet commonly known as Olcott situate in said town." By its provisions the State Commissioner of Excise was directed "to establish a limit or boundary line" of said hamlet of Olcott "in the manner provided in subdivision 7 of section 11 of the liquor tax law." The act further provided for the submission at a special town meeting of the local option questions "to the qualified electors of the town of Newfane" for the purpose of determining whether the traffic in liquors should be carried on in said hamlet. The calling of the said town meeting, the giving of the notice, and the effect of the vote are prescribed in the act. It then proceeds:

"Such vote shall take effect immediately, but shall neither authorize nor preclude the issuance of liquor tax certificates for the traffic in liquors in said town of Newfane not included within the limits of said hamlet, but shall remain in full force and effect, without regard to the result of the vote upon the local option questions submitted at the next biennial town meeting in said town, and until the second regular submission of such questions to the electors of said town shall be had and the result thereof take effect. The traffic in liquors in said hamlet, except as prescribed in this act, is subject to all the provisions of the liquor tax law."

The act took effect immediately, the boundaries were defined, the special meeting was had within 30 days, resulting in favor of the traffic of liquor in Olcott, and later a liquor tax certificate was issued to the plaintiff. The "next biennial town meeting in said town" at which the local option questions were submitted to the electors was held in November, 1905, and "the second regular submission" of such questions was had in November, 1907, and the vote was in the negative, and the result became effective on May 1st following.

It is the claim of the plaintiff that, when the boundaries of Olcott became established, there was a permanent separation from the rest of the town, in that the vote on the liquor tax questions must be submitted to the electors specifically for that hamlet, the same as on the special election directed by the act. The appellants contend that the negative vote at the biennial election in 1907 included the hamlet of Olcott with the balance of the town. The special act must be construed in harmony with the liquor tax law (chapter 112, p. 45, Laws 1896, and many times amended). By that act the town is the unit, even though it may contain one or more incorporated villages. In order to obtain the correct enumeration of the inhabitants of an incorporated village, if not shown by the state or federal census, the State Commissioner of Excise may cause such enumeration to be taken. Likewise he may cause such enumeration to be taken "of the inhabitants of any hamlet or unincorporated village after having first established" its boundaries, and, when established, "the boundary line shall not be changed" for five years. Liquor Tax Law (Laws 1897, p. 213, c. 312) § 11, subd. 7. The object of this enumeration is to enable the commissioner to fix the rate for the certificate permitting the holder to engage in the liquor traffic. The electors of the town still determine whether liquor shall be sold and the vote determines the liquor questions alike for the entire town. The liquor traffic is, not permitted in one village and excluded from another in the same town. In the present act the submission of the questions at the special town meeting conforming to the general law was to the electors of the town, but departed from that law in that the result was confined to Olcott. There are apparent reasons for this course. Olcott is a summer resort extensively patronized, and the act became operative early in May, and the people of Olcott wished to reap the benefit during the ensuing summer season if the vote should be favorable to the liquor traffic. The liquor tax law requires a petition signed by 10 per centum of the electors of the town to be filed with the town clerk not less than 20 days before the town meeting requesting the submission of the questions to the electors. That requirement was explicitly waived in the act. The object of the act was to obtain a speedy submission

to the electors of the town, and then the vote was to affect only this hamlet. There is no provision in the act for any other election, except in accordance with the plan of the liquor tax law. Limitation is explicitly put upon the effect of the first vote. It "shall remain in full force and effect * * * until the second regular submission of such questions to the electors of said town shall be held, and the result thereof take effect." There is nothing in the act requiring that submission to be especially for the hamlet of Olcott. On the other hand, it is the "regular submission" in pursuance of the liquor tax law. In other words, the Legislature by this special act permitted a temporary deviation from the general law. The vote at the special election was to be operative until the electors of the town voted on the subject at its second regular submission. That might be several years. In any event, the second biennial election could not be had earlier than November, 1905, and that vote would become effective in May following. There does not seem to have been any submission of these questions at the biennial election in November, 1903. There was, however, in 1905, and the second regular submission was in 1907. If the requisite petition of the electors requesting the submission had not been filed, the plaintiff would have been secure in the traffic for another two years at least.

It does not seem reasonable that the Legislature intended this separation of Olcott from the balance of the town to be permanent. We would expect to find so radical departure from the general law distinctly expressed in the special act. So far as appears, it was intended for a definite period, if the electors of the town so determined. There is no plan outlined for the submission of these questions specially for Olcott at future town meetings, and no provision for petition or notice, although if the scheme of the general law is to be adopted, there should be a separate petition and a separate notice relating to Olcott. There is no provision that the features of that law pertaining to these preliminaries are to be adopted so far as pertinent. On the other hand, the effect of the first vote is distinctly limited "until the second regular submission" to the electors. That submission pertains to the vote which is to affect the whole town. The "regular submission" is not in pursuance of the special act, and would not enable Olcott to be set apart from other hamlets or parts of the town, and yet, when that submission becomes operative, it ends the effect of the vote under the special act.

The judgment should be reversed, and a new trial ordered, with costs to the appellants to abide event.

Judgment reversed and a new trial ordered, with costs to appellants to abide event. All concur.