(174 App. Div. 715)

PEOPLE ex rel. SKELLY v. HEGEMAN, County Treasurer, et al.

(Supreme Court, Appellate Division, Second Department. July 28, 1916.)

INTOXICATING LIQUORS ⬷103—TRANSFER OF CERTIFICATE—LIQUOR TAX LAW.
   Under Liquor Tax Law (Consol. Laws, c. 34) § 8, subd. 9, as added by Laws 1910, c. 494, notwithstanding section 25, a person having a tax certificate to sell liquor in the village of Sea Cliff in the town of Oyster Bay is not entitled to abandon that location and have his certificate transferred to an unincorporated village in such town, upon payment of the additional tax, as the transfer would disregard the ratio scheme of the Liquor Tax Law.

   [Ed. Note.—For other cases, see Intoxicating Liquors, Cent. Dig. §§ 108–112; Dec. Dig. ⬷103.]

Appeal from Special Term, Nassau County.

Certiorari by the People, on the relation of Thomas J. Skelly, against Daniel J. Hegeman, Treasurer of the County of Nassau, and George E. Green, as Commissioner of Excise of the State of New York.

⬷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

From an order, defendants appeal. Order reversed, and writ of certiorari dismissed.

Argued before JENKS, P. J., and THOMAS, CARR, RICH, and PUTNAM, JJ.

J. S. Whipple, of Salamanca, for appellants.
David M. Neuberger, of New York City, for respondent.

THOMAS, J. The question is whether a person having tax certificate to sell liquor in the village of Sea Cliff in the town of Oyster Bay is entitled to abandon that location and have his certificate transferred to the unincorporated village of Glen Cove in the same town, upon payment of the additional tax. The appellant asserts that the transfer can be only to a place in the same village for which the certificate was issued.

The provisions of the Liquor Tax Law that deal directly with the matter are section 8, subdivision 9, and section 25. But several features of the law should be considered. First comes the assessment of the tax, measured by the manner of selling liquor, and in some instances by the population of the place where it is sold, as described in the first seven subdivisions of section 8. The only political divisions there mentioned are a city, a borough, a village, and finally there is a reference to "any other place," which would cover a town, although it is not specifically included. Then comes provision enabling and directing the commissioner of excise in certain cases of need to enumerate the inhabitants of a city, a village, and also a hamlet or unincorporated village after establishing a line around it. A borough also is mentioned, but not a town. But subdivision 9 declares that no liquor tax certificate shall be issued in any town, village, borough, or city until the ratio of population therein shall be greater then 750 to one, with exceptions stated. Then comes the following:

"Provided, however, that at any time during the unexpired term of any liquor tax certificate issued for traffic in liquors under the provisions of subdivision one of this section in any premises in which such traffic may lawfully be carried on, a notice stating that such traffic in liquors is abandoned at the premises named in such certificate may be filed with the county treasurer or special deputy commissioner of excise of the county or borough in which the certificated premises are located, which notice shall also particularly describe some other premises in which it is intended to carry on such traffic, which premises shall be situated in the *same* city, borough, village or town as that in which the abandoned premises are located."

Later it is provided:

"After the filing of such notice as aforesaid, the prohibition herein contained shall not  *  *  *  apply to the premises described in such notice as the premises in which it is intended to carry on such traffic."

Then, after a proviso not here important, it is declared that a certificate shall not be issued for the abandoned premises, except upon a retransfer of the certificate thereto. The prohibition made inapplicable, as above stated, is that a certificate shall not be issued unless the specified ratio of population to the number of certificates exist. One place authorized by the existence of the proper ratio, or because with-

in an exception, is closed and another is substituted in the same territory. The prohibition did not preclude the first place, because the certificate had been lawfully issued, and hence should not be a condition precedent to doing business in the same city, borough, village, or town. But if the change be from a division where the certificate by law could issue to another district, there would be no reason for removing the application of the ratio rule obtaining there. Subdivision 9 contemplates the ascertainment of a ratio for a town, and a ratio for a village. There must be an enumeration of the village, to obtain the ratio there and to fix the tax. There must be an enumeration of the town to ascertain the ratio, but for the purposes of the amount of the tax it may be that it is not required, as it falls within the words "any other place, the sum of one hundred and fifty dollars."

The question has been suggested whether, in ascertaining the ratio for the town, the inhabitants of the village may be enumerated. If so, it has been argued that the village would be accredited with the number of certificates its population would bear, and for the town the inhabitants of the village would be reused, and the quota of certificates increased thereby. Moreover, if the commissioner should draw a line about hamlets and unincorporated villages, and enumerate the inhabitants, could they also be used to ascertain the quota of certificates for the town? There is no provision for a ratio in the case of such newly erected district, nor is it stated what use shall be made of the enumeration of inhabitants thereof. Such questions may have a bearing upon the present inquiry, which, however, can be pursued without answering them. The statute makes careful provision for enumerating villages and ascertaining the ratio therein, with prohibition against exceeding it.

There are other features of the statute that bear on the question. One is the provision (section 8, subd. 9) for receiving bids for issuing certificates to the highest bidder for the privilege of trafficking in liquors in a city, borough, village, or town. The rule as to ratio, with some exception, applies. If the applicant acquire a location in a town, outside a village, the ratio permitting it, he can, by respondent's contention, abandon it and transfer his certificate to a village where the quota is full. He bids for one tax district, and has an option on any of the others in the same town, because the statute does not make applicable the ratio rule to the place to which the certificate is transferable. On the other hand, it may be useful to note that under section 10 of the Liquor Tax Law a part of the taxes "shall belong to the town or city in which the traffic was carried on from which revenues were received," and, except as otherwise specifically appropriated, "may be applied to the ordinary expenses of the city or town," and that, by section 13, the electors of each town shall determine whether certificates shall be issued "to any person to traffic in liquor in said town." The inhabitants of villages have no right to vote on the question, save as electors of the town. "The liquor traffic is not permitted in one village and excluded from another in the same town." Killinger v. Clement, 131 App. Div. 461, 115 N. Y. Supp. 407. By subdivision 2 of section 24 it is provided that in case of the cancellation or rebate of

a certificate there shall be notice to the chief police officer of the "city, borough or village in which the place for which the surrendered certificate was issued is situated, or upon the sheriff of the county and a constable of the town, in case the certificate was issued for a place situated in a town and not within any city, borough or village." Section 25 enables the holder of a certificate to have it transferred to premises, other than those for which it was issued, "but in the same city, borough or town, and in premises where such traffic is not prohibited by this chapter."

Section 25 was enacted by chapter 112, Laws of 1896, while subdivision 9 was added to section 8 in 1910 (Laws 1910, c. 494). Section 25 was amended by chapter 407, Laws of 1911, when the word "borough" was inserted, and subdivision 9 of section 8 was last amended by chapter 122, Laws of 1916. The several sections must be read together. Section 25 prohibits transfer to "premises" where the traffic is prohibited. But that prohibition cannot refer to the general prohibition based on the ratio rule, because subdivision 9, section 8, declares that such prohibition does not apply to the proposed new premises. I think that the words "original locality" and "new locality," used in section 25, refer to the location of the "premises." Similar use of the word "locality" is found in section 15, subdivision 3, where it is required that the applicant for a certificate shall describe the premises so as to "indicate the locality thereof."

While a town, through its electors, may prohibit the sale of liquor at any place within its limits, and may have all the benefits from the revenue not otherwise appropriated, the system is to make a village a distinct district (1) for the purpose of measuring the amount of the tax; (2) for the purpose of enumerating its inhabitants; (3) for the purpose of establishing a ratio of population to certificates, and by section 8, subdivision 9, for the transfer of certificates, whereby the first licensed premises becomes disabled for the liquor traffic and the new premises legalized irrespective of the ratio rule. Before the introduction of that rule, it was immaterial whether the traffic was in a village or elsewhere in a town, except as concerns the amount of the tax; but when it became the law that in a village there should be a certificate only for each 750 of the population, with exceptions not here pertinent, a new element was introduced, whereby the village was segregated, and provision was made for transferring certificates from one premises to another in the same village. The provision also treated of transfers in the same town, but as the village is named separately from the town for the purpose of fixing the ratio and for the purpose of transferring certificates, section 25 should be regarded as limited by the later provision.

If transfers of business can be made indifferently from one place to any other in a town, then all the certificates issued for selling liquor in the town of Oyster Bay can be centered in the village of Sea Cliff. That destroys the ratio rule. If an applicant finds the quota of Sea Cliff filled, he may obtain a certificate for any other part of the town qualified to receive him, and then transfer his business to Sea Cliff, or the full quota of any other place may in similar manner be taken from

out the ratio rule, because it must always be kept in mind that the transfer, if legally allowed, is done irrespective of the ratio rule where the new premises are situated. Such disregard of the scheme of the Liquor Tax Law, viewed in its entirety, should not be permitted, notwithstanding the provision in section 25, which was harmonious with the statute previous to the addition of subdivision 9 to section 8, but, if given its former scope, is inconsistent with, and destructive of, a new and important element in the Liquor Tax Law.

The order should be reversed, and the writ of certiorari dismissed, with $50 costs and disbursements. All concur.